[Nos. B049723, B051996. Second Dist., Div. Four. Sept. 20, 1991.]

AMERICAN HOME ASSURANCE COMPANY, Plaintiff and Appellant,
v.
LYNN BENOWITZ, Defendant and Respondent.

## COUNSEL

Henderson & Wohlgemuth, Anthony B. Nixon and Gerald B. Valasco for Plaintiff and Appellant.

Parsons & Anderson and Steven L. Anderson for Defendant and Respondent.

## OPINION

**EPSTEIN, J.**—The respondent, Lynn Benowitz, thought that her automobile insurer had unreasonably delayed in acting on her demand to arbitrate a dispute under the uninsured motorist provision of her policy. Through her attorney, she selected her own arbitrator and proceeded to obtain an award at a scheduled hearing. We conclude that the insurer committed no breach giving rise to a waiver of its rights under the uninsured motorist provision of the policy, and that, even if it had, Ms. Benowitz's remedy was to compel arbitration. She was not entitled to unilaterally select an arbitrator and procure an award. The trial court erred in denying the insurer's motion to vacate the award, in granting Ms. Benowitz's motion to confirm the award, and in issuing judgment on the confirmed award. These errors require reversal.[1]

### FACTUAL AND PROCEDURAL SUMMARY

Lynn Benowitz entered into an automobile insurance agreement with American Home Assurance Company on October 18, 1988. (We will generally refer to her as "insured," and to the issuing company as "insurer.") She was the victim of a hit-and-run accident in Beverly Hills on February 8, 1989, a date within the policy period. Some two weeks later, she notified an agent of the insurer of the accident, and forwarded information about her injuries and damages to her vehicle. On July 17, 1989, after she had completed a course of treatment for her injuries, she sent the insurer a demand to settle under the uninsured motorist provision of her policy, for

---

[1]The insurer has appealed from two separate adjudications. The first is from the order denying its motion to vacate the award, and is numbered B049723 in the files of this court. The second is from the judgment that issued after the award was confirmed. It is numbered B051096 in our files. These appeals have been consolidated and are considered together in this opinion. In light of our conclusion, just summarized and discussed in detail in the body of our opinion, we need not reach appellant's claims that the notice of arbitration hearing failed to satisfy the requirements of Code of Civil Procedure section 1282.2, subdivision (a)(1), and that the court erred in denying appellant's motion for reconsideration.

$25,000. A representative of the insurer acknowledged this demand on August 11, 1989, and informed the insured that 30 days were needed for a response.

Apparently the insurer made a $2,146 offer to settle within that time, since the insured wrote the insurer on September 12, 1989, acknowledging the offer, rejecting it, and requesting a copy of the insurance policy. The insurer responded three days later, on September 15, 1989, that the policy was being assembled and would be sent to the insured.

The insured repeated her request for a copy of the policy in a facsimile communication of September 19, 1989. That same message repeated her earlier rejection of the $2,146 offer, and demanded arbitration of the uninsured motorist claim.

The insurer then sent the policy and increased its offer. In an October 5, 1989, transmission, it enclosed a copy of the policy and reiterated an earlier offer to settle for $14,000, of which $3,854 was offset for medical payments already received by the insured, and $10,146 was new money for her. That communication apparently crossed in the mail with the first letter from Steven L. Anderson, who wrote the insurer as attorney for Ms. Benowitz. This letter, dated October 3, 1989, notified the insurer of his representation of the insured and again rejected the $2,146 offer.

On November 21, 1989, some 47 days after the policy had been sent to Ms. Benowitz, Mr. Anderson sent a letter to the insurer that is central to the litigation. He acknowledged that the insurer had substantially increased its offer, but said that the new amount was still insufficient. He then said that he had "gone ahead and selected a neutral arbitrator," an attorney named Richard Voorhies, and that he had scheduled an arbitration in Mr. Voorhies's office for December 5, 1989. The insurer objected in writing to this procedure, asserting that the arbitrator had not been selected in accordance with the arbitration provision of the policy. This letter, of December 1, 1989, and a second, similar letter of December 4, 1989, also informed Mr. Anderson that the insurer would not appear at the scheduled hearing, lest its appearance and participation be considered a waiver of its objection to the procedure. (See *Ray Wilson Co.* v. *Anaheim Memorial Hospital Assn.* (1985) 166 Cal.App.3d 1081 [213 Cal.Rptr. 62]; *Kemper* v. *Schardt* (1983) 143 Cal.App.3d 557, 560 [192 Cal.Rptr. 46].)

The arbitration hearing was held as scheduled before Mr. Voorhies on December 5, 1989; the insurer was not represented. The following day, December 6, 1989, Mr. Voorhies issued an award in favor of Ms. Benowitz and against the insurer, for $44,789. The insurer received a copy of the

award on December 14, 1989, and 15 days later filed a petition in the superior court to vacate the award.

The insured filed an opposition to the petition, in which she asked for the affirmative relief of a confirmation of the award and for judgment. After oral argument and a submission, the court issued its order denying the petition on February 5, 1990. The minute order gives the following explanation: "Petitioner completely ignored responding party's request for a copy of her policy and demand for arbitration. Not until almost 3 months later, when informed a hearing would be held, did petitioner respond by refusing to participate in any arbitration scheduled by responding party. Petitioner's inexcusable delay constitutes a waiver."

After that, the insurer moved the court to reconsider its ruling; the motion was denied. Ms. Benowitz submitted a proposed judgment, confirming the $44,789 award to her, together with interest; judgment was signed and entered as requested, on March 19, 1990. The insurer filed timely appeals from the order denying its petition to vacate and from the judgment. As we have noted, these appeals have been consolidated. Because we conclude that the award was obtained without legal authority and cannot be justified on a doctrine of waiver, we are compelled to reverse the order and judgment, with directions that the petition to vacate be granted.

### DISCUSSION

Since 1961, California has required that all automobile bodily injury insurance policies include an uninsured motorist provision, unless the parties agree to delete this coverage by a specific written provision. This comprehensive statute is found in section 11580.2 of the Insurance Code. Subdivision (f) of the statute provides for resolution of disputes concerning entitlement to damages and the amount of damages. It requires that policies provide that such determinations "shall be made by agreement between the insured and the insurer or, in the event of disagreement, by arbitration. The arbitration shall be conducted by a single neutral arbitrator."

The year 1961 saw the enactment of another comprehensive statute, the Arbitration Act (Code Civ. Proc., § 1280 et seq.).[2] Supplanting arbitration statutes dating back to 1927, the Arbitration Act was drafted by the California Law Revision Commission to provide a comprehensive, all-inclusive statutory scheme applicable to all written agreements to arbitrate disputes. (*Crofoot* v. *Blair Holdings Corp.* (1953) 119 Cal.App.2d 156, 182 [260 P.2d 156], disapproved on other grounds in *Posner* v. *Grunwald-Marx,*

---

[2]All further code citations are to the Code of Civil Procedure unless otherwise indicated.

*Inc.* (1961) 56 Cal.2d 169, 183 [14 Cal.Rptr. 297, 363 P.2d 313]; *Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 479 [121 Cal.Rptr. 477, 535 P.2d 341].) It "provides the sole statutory recognition concerning the appointment of arbitrators." (*Atlas Plastering, Inc.* v. *Superior Court* (1977) 72 Cal.App.3d 63, 69 [140 Cal.Rptr. 59].)

The Arbitration Act recognizes that arbitration agreements are divided into two broad categories with respect to selection of the arbitrator or arbitrators: those that are self-enforcing, and those that are not. Section 1281.6 states that if the agreement provides a method of appointing an arbitrator, "such method shall be followed." If it does not, the parties may agree upon a method. But failing a contractual provision or later agreement of the parties, the statute provides the method. Any party entitled to arbitrate may petition the superior court to appoint an arbitrator. When that is done (and the court ascertains that the petitioning party is entitled to arbitration), "the court shall nominate five persons from lists of persons supplied jointly by the parties to the arbitration" and, if the parties do not agree on a selection from that list within five days, the court shall select an arbitrator from the list of five. (§ 1281.6.) (See *Titan Enterprises, Inc.* v. *Armo Construction, Inc.* (1973) 32 Cal.App.3d 828, 830 [108 Cal.Rptr. 456] [self-executing provision is one whose provisions spell out or incorporate method for selecting arbitrator without necessity of resort to judicial process]; *Gunderson* v. *Superior Court* (1975) 46 Cal.App.3d 138, 143 [120 Cal.Rptr. 35] [unless provision is self-executing, method of enforcement is by initiation of proceedings under statute]; *Brink* v. *Allegro Builders, Inc.* (1962) 58 Cal.2d 577, 580 [25 Cal.Rptr. 556, 375 P.2d 436] ["[t]he statutory procedure to compel arbitration by court order was designed to afford a remedy where the parties have not provided for the contingency that has arisen or where the contractual scheme has failed"].)

The uninsured motorist statute provides for a non-self-executing type of arbitration. As we have seen, it requires a resolution by a "single neutral arbitrator" if the parties do not resolve their dispute. "Neutral arbitrator" is a term of art, defined in section 1280, subdivision (d) of the Arbitration Act. It is an arbitrator selected jointly by the parties or by arbitrators selected by each party, or "appointed by the court when the parties or the arbitrators selected by the parties fail to select an arbitrator who was to be selected jointly by them." (§ 1280, subd. (d)(2).)

■ Where a statute such as section 11580.2 of the Insurance Code requires a contract to provide for certain matters, "the statute becomes a part of the contract." (*Freeman* v. *State Farm Mut. Auto Ins. Co., supra,* 14 Cal.3d at p. 479; see also *United Firefighters* v. *City of Los Angeles* (1984) 153 Cal.App.3d 383, 387 [200 Cal.Rptr. 233].) The arbitration clause of the

insurance contract in this case paraphrases the statutory provision; it states that if the parties do not otherwise agree, any dispute over entitlement to damages under the uninsured motorist provision shall be determined by a "single neutral arbitrator." ■ Where the text of the insuring clause essentially restates the statutory language relating to arbitration, the arbitration is to be as contemplated in the statute. (See *Hartford Accident & Indemnity Co.* v. *Jackson* (1983) 150 Cal.App.3d 111, 114 [197 Cal.Rptr. 477].)

The salient facts are essentially undisputed in this case; certainly, there is no quarrel over the provisions of the pertinent statutes or the contract. ■ ■ The construction of a statute is a matter of law, about which appellate courts are not bound by determinations of the trial court. (*People* ex rel. *Dept. Pub. Wks.* v. *Ryan Outdoor Advertising, Inc.* (1974) 39 Cal.App.3d 804, 809 [114 Cal.Rptr. 499].) The same is true with respect to construction of the provisions of a written contract (absent issues raised by extrinsic evidence; there are no such issues in this case). (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; *United Firefighters* v. *City of Los Angeles, supra,* 153 Cal.App.3d at p. 387.) This principle is, of course, applicable to arbitration provisions in contracts. (*Conejo Valley Unified School Dist.* v. *William Blurock & Partners, Inc.* (1980) 111 Cal.App.3d 983, 988 [169 Cal.Rptr. 102].)

■ Arbitration is a matter of contract. (*Atlas Plastering, Inc.* v. *Superior Court, supra,* 72 Cal.App.3d at p. 69; *O'Malley* v. *Wilshire Oil Co.* (1963) 59 Cal.2d 482, 492 [30 Cal.Rptr. 452, 381 P.2d 188]; *Freeman* v. *State Farm Mut. Auto. Ins. Co., supra,* 14 Cal.3d at p. 479.) By agreeing to arbitrate, the parties give up a valuable right: the opportunity to seek a resolution of their dispute by court trial. (See *Furlough* v. *Transamerica Ins. Co.* (1988) 203 Cal.App.3d 40, 45 [249 Cal.Rptr. 703].) Because of this, the general judicial policy favoring arbitration does not apply to the resolution of disputes that are not encompassed within the agreement to arbitrate. (See *Parker* v. *Twentieth Century-Fox Film Corp.* (1981) 118 Cal.App.3d 895, 901 [173 Cal.Rptr. 639]; *Service Employees International Union* v. *County of Napa* (1979) 99 Cal.App.3d 946, 958 [160 Cal.Rptr. 810]; *American Builder's Assn.* v. *Au-Yang* (1990) 226 Cal.App.3d 170, 179 [276 Cal.Rptr. 262].)

■ The same is true of the powers of the arbitrator: they derive from the contract, and cannot exceed the contract to arbitrate and the parties' submission to arbitration. (*Hacienda Hotel* v. *Culinary Workers Union* (1985) 175 Cal.App.3d 1127, 1131 [223 Cal.Rptr. 305]; *Aetna Cas. & Surety Co.* v. *Superior Court* (1965) 233 Cal.App.2d 333, 336 [43 Cal.Rptr. 476].) This is true, a fortiori, with respect to the selection of an arbitrator. A selection that is not authorized by the arbitration contract, or by a statute that is effectively

incorporated into that agreement, confers no authority on the person selected. Unless this fundamental defect is waived by the parties, or a party is estopped from raising it, there is simply nothing to confirm. (See *In re Bewick* (1942) 49 Cal.App.2d 287, 290 [121 P.2d 815] [if arbitrator to be selected by a party was in fact not selected by that party, the neutral arbitrator to be selected by the two party arbitrators would have no standing, and "there could be no arbitration and no award made that could be confirmed"].)

 These principles have a clear application to the case before us. The uninsured motorist statute provides only a skeletal provision for arbitration, and the contractual provision does no more than repeat it. ██ █ The substance of the selection process is to be found in the Arbitration Act which is, for these purposes, in pari materia with the Insurance Code provision.[3] Thus, the courts consistently have applied the Act in uninsured motorist cases. (See, e.g., *Freeman* v. *State Farm Mut. Auto. Ins. Co., supra,* 14 Cal.3d 473, 481; *Mayflower Ins. Co.* v. *Pellegrino* (1989) 212 Cal.App.3d 1326, 1335 [261 Cal.Rptr. 224]; *Hartford Accident & Indemnity Co.* v. *Jackson, supra,* 150 Cal.App.3d 111, 114; *Members Ins. Co.* v. *Felts* (1974) 42 Cal.App.3d 617, 622 [117 Cal.Rptr. 54].)

If the insured believed that the insurer was not forthcoming to her demand to arbitrate, her remedy was to invoke the arbitrator selection provisions of the Arbitration Act. The case authority we have cited makes it clear that, absent an agreement with the insurer, that was her sole remedy. She had no authority to go out and select her own arbitrator and compel the insurer to submit to binding (or any) arbitration before the person selected.

 Against this, the insured presents an argument of waiver. We find it deficient on two grounds: there was no waiver, and even if there were, it would not justify confirmation of the award in this case.

 Since the right to arbitrate flows from an agreement of the parties, it may be lost by a failure to assert it in a proper and timely manner.

[3]The insured argues that the Arbitration Act does not apply to uninsured motorist cases because the governing statute, Insurance Code section 11580.2, subdivision (f), specifically makes the civil discovery statute (§ 2016 et seq.) applicable to such cases. Her position is that if the Legislature had intended that the Arbitration Act apply to such cases, it would have said so specifically, as it had with respect to the discovery law. A more probable explanation for the reference lies in the fact that an arbitration hearing is a "special proceeding" to which the discovery statute has no application absent an express provision to the contrary. (See *McRae* v. *Superior Court* (1963) 221 Cal.App.2d 166, 172 [34 Cal.Rptr. 346, 98 A.L.R.2d 1239]; and see 1 Hogan, Modern Cal. Discovery (4th ed. 1988) Introduction to Civil Discovery, § 1.6, p. 13.) The Legislature obviously intended that the discovery statute apply to the arbitration of uninsured motorist cases.

(*Gunderson* v. *Superior Court, supra,* 46 Cal.App.3d at p. 143.) " 'Waiver is the intentional relinquishment of a known right after knowledge of the facts.' " (*Members Ins. Co.* v. *Felts, supra,* 42 Cal.App.3d at p. 622.) Waiver in the context of arbitration is thus possible, but it is not to be lightly inferred. (See *Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 189 [151 Cal.Rptr. 837, 588 P.2d 1261] [claims of waiver of right to arbitrate to be closely scrutinized].)

The trial court, and the insured, find waiver in the failure of the insurer to respond earlier than it did to her demand for arbitration and to a request for a copy of her policy. This demand and request were stated to have been "completely ignored" by the insurer. In fact, the policy was sent within 23 days of the insured's initial request. That is hardly an unconscionable period of time, let alone a lapse that justifies the characterization of complete disregard of the request.

As we have pointed out, either party to an arbitration contract may demand arbitration. If the parties fail to agree on an arbitrator, either may precipitate arbitration by filing a petition under the Arbitration Act. The insured was fully entitled to do this. Instead, she and the trial court seem to believe that the failure of the insurer to "respond" to her demand amounted to an act of bad faith. Again, the facts present a different picture.

The initial demand for arbitration was made on September 19, 1989, together with the insured's rejection of the low offer made by the insurer. Within a little over three weeks, the insurer responded by sending a copy of the policy, as requested, and by substantially increasing its offer to settle. Just before that, the insured's attorney entered the picture, informing the insurer that his client rejected the initial offer. The increased offer remained on the table for 47 days, until the insured's attorney unilaterally selected an attorney to act as "neutral arbitrator." Even aside from the fact that the demand for arbitration appears to be defective for failure to include the workers' compensation declaration required by Insurance Code section 11580.2, subdivision (f), there was no delay, unconscionable or otherwise, under these facts. What we have is a demand for arbitration and rejection of an offer to settle, a substantially increased offer made within a reasonable time after that, and a delayed rejection of the new offer coupled with a unilateral selection of an arbitrator.

The insured relies on *Davis* v. *Blue Cross of Northern California* (1979) 25 Cal.3d 418 [158 Cal.Rptr. 828, 600 P.2d 1060]. In that case, the Supreme Court concluded that a health insurance carrier had lost its right to arbitrate a dispute by failing to notify its insureds of the arbitration provision in its contract. It was significant that the arbitration clause was buried in the

agreement so that the carrier knew the insureds would not be aware of it, and that the insureds were proceeding without legal representation. (25 Cal.3d at pp. 426, 428.)

None of these problems was present in this case. The arbitration clause was not "buried" in the contract, and, as shown from her demand to arbitrate, the insured was aware of its existence. The clause itself did not spell out the procedure for selecting an arbitrator; that was established in the Arbitration Act. It may be that without information from the insurer, Ms. Benowitz would not have been aware of these provisions on her own. But she was not acting on her own; she had an attorney. ▮ "[A] mistake of law may be excusable when made by a layman but not when made by an attorney." (*Tammen* v. *County of San Diego* (1967) 66 Cal.2d 468, 479 [58 Cal.Rptr. 249, 426 P.2d 753].) Her lawyer was "presumed to know the laws and rules of procedure which govern the forms of litigation, the legal remedies, which he selects and pursues. ▮ Those who elect to arbitrate also elect to follow and be governed by the laws and rules governing arbitration." (*Supple* v. *City of Los Angeles* (1988) 201 Cal.App.3d 1004, 1011 [247 Cal.Rptr. 554].)

Indeed, there is no claim to the contrary. We may assume that Mr. Anderson was fully aware of the applicable provisions of the Arbitration Act, and that he knew how to invoke them in order to precipitate a formal resolution of his client's dispute with the insurer. His failure to pursue them cannot be laid at the foot of the carrier. His extralegal selection of an arbitrator certainly cannot bind the carrier.

▮ Beyond that, the relief sought by the insured, and granted by the court, far exceeds that granted in *Davis*, or in any other case that has come to our attention. *Davis* held that a carrier's inaction amounted to a waiver of its right to demand arbitration. The result was that the dispute of the parties was to be adjudicated through the adversarial court process. The carrier was not required to accept a result determined by someone unilaterally selected by its insured.

Yet that is the effect of the ruling in this case. A contract provision requiring a contract party to arbitrate a dispute before another party to the agreement who is adverse to the first party's interests has been held to be unconscionable and unenforceable. (*Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 827 [171 Cal.Rptr. 604, 623 P.2d 165].) It is no different when the arbitration is to be held before a single arbitrator unilaterally selected by

a contract party who is adverse to the other party, because of a presumptive bias in favor of the party who made the selection.[4] (*Id.* at p. 821.)

Since the award procured in this case was given without legal authority, it should have been vacated. (§ 1286.2.) For the same reason, the judgment based on the award was improper and cannot stand.

### DISPOSITION

The judgment is reversed, and the order denying the petition to vacate the award is reversed with directions that a new and different order be entered granting the petition. Appellant is to recover costs on appeal.

Woods (A. M.), P. J., and Cooper, J.,* concurred.

---

[4]This is to be contrasted with the familiar formula by which a neutral arbitrator is selected by arbitrators appointed by each of the parties. That is a procedure contemplated in the Arbitration Act, and is fully enforceable. (See *Tate* v. *Saratoga Savings & Loan Assn.* (1989) 216 Cal.App.3d 843, 851 [265 Cal.Rptr. 440].)

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.